# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARLEAN FOSTER; KATHLEEN MILTON; PAUL E. BLAIR; MAI R. THURMAN; CLAUDIA M. SMITH; DARLENE BREIT; GLORIA D. GLOVER ) ) ) ) ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 04 C 1072 |
| ) | |
| ) | Judge Joan B. Gottschall |
| SHERMAN ACQUISITION, LP; SHERMAN FINANCIAL GROUP, LLC; SHERMAN ACQUISITION II, LP SHERMAN ACQUISITION II GENERAL PARTNER, LLC; SHERMAN GENERAL PARTNER SPE LLC; REDLINE RECOVERY SERVICES, LLC; NATIONAL ACTION FINANCIAL SERVICES, INC.; FINANCIAL RECOVERY SERVICES, INC; M..R.S. ASSOCIATES, INC.; and NATIONAL ENTERPRISE SYSTEMS, INC. ) ) ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge Denlow |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiffs in this action are Charlean Foster, Kathleen Milton, Paul E. Blair, Mai R. Thurman, Claudia M. Smith, Darlene Breit, and Gloria D. Glover. The defendants are Sherman Acquisition, LP, Sherman Financial Group, LLC, Sherman Acquisition II, LP, Sherman Acquisition II General Partner, LLC, and Sherman General Partner SPE LLC ("SPE") (collectively, "Sherman"); and Redline Recovery Services, LLC ("RRS"), National Action Financial Services, Inc. ("NAFS"), Financial Recovery Services, Inc. ("FRS"), M.R.S. Associates, Inc. ("MRS"), and National Enterprise Systems, Inc. ("NES") (collectively, the "Services Defendants"). Plaintiffs allege that defendants have committed various violations of the Fair Debt Collection Practices Act, 15 U.S.C. §

1692 *et seq.* ("FDCPA"). Plaintiffs also purport to represent several classes of similarly situated persons with respect to Sherman and the various Services Defendants, but have withdrawn their motion for class certification pending the results of appeals of two cases alleging very similar causes of action to those of the instant case.

Before the court are separate motions to dismiss plaintiffs' fourth amended complaint under Fed. R. Civ. P. 12(b)(6) filed by Sherman, SPE, RRS and FRS, as well as a motion to dismiss filed jointly by NAFS, MRS and NES, which joint motion solely adopts the arguments made by Sherman, RRS and FRS.

For the reasons discussed below, each of these motions to dismiss is denied in its entirety.

**INTRODUCTION**

Sherman is a group of related companies in the business of purchasing credit card debt that has been "charged-off" by the card issuers because it is in default and remains uncollected. After Sherman purchases these debts, it attempts to collect on them.

The Services Defendants are companies that were hired by Sherman to attempt to collect the charged-off debt from the plaintiffs. Each of the plaintiffs received a collection letter sent by one of the Services Defendants on behalf of Sherman notifying that plaintiff that Sherman had purchased the debt specified in the letter and seeking repayment.

Plaintiffs have filed a four-count fourth amended complaint alleging: (i) that Sherman violated the FDCPA by charging plaintiffs interest at rates not authorized by contract and greater than the applicable statutory default rate in the event no contracts exist, and that the Services Defendants participated in these violations by sending collection letters demanding the unauthorized interest (Count I); (ii) that defendants (except for NES) misrepresented the unauthorized interest rates to plaintiffs in breach of the FDCPA (Count II); (iii) that Sherman had no authority under

Illinois law to charge interest at the same rate as the card-issuing institutions from which it purchased plaintiffs' accounts, constituting a breach of the FDCPA (Count III); and (iv) that the collection letters sent to plaintiffs were confusing, in violation of the FDCPA (Count IV).

Although the defendants have filed several separate motions to dismiss, their arguments are largely duplicative. The court's discussion treats them generally, except where noted.

## STANDARD

In reviewing a motion to dismiss for failure to state a claim, the court reviews all facts alleged in the complaint and any reasonable inferences drawn from those facts in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). The court will grant the motion only if it appears that the plaintiff cannot prove any set of facts that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## ANALYSIS

### Counts I & II

The heart of plaintiffs' claim in Count I is their assertion that Sherman (and by extension the Services Defendants) "violated the FDCPA by charging interest on debts not authorized by contract or by a statute applicable in the absence of a contract." (Fourth Amend. Compl. ¶ 100.) Specifically, plaintiffs allege that charging this "unauthorized interest" violates the FDCPA's prohibitions on debt collectors' use of false or misleading data in connection with debt collection activities, or otherwise attempting to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1); *see also* 15 U.S.C. § 1692e.

Count II asserts a related claim, asserting that because defendants did not know what the agreed-upon rates were as to each plaintiff, but misrepresented to plaintiffs that "interest would continue to be charged pursuant to the credit card agreement," they violated prohibitions on falsely

3

representing the interest calculations on plaintiffs' accounts under 15 U.S.C. §§ 1692e(2), e(10). (Fourth Amend. Compl. ¶¶ 126, 128.)

In support, plaintiffs plead that Sherman had no knowledge of the contractually agreed interest. (Fourth Amend. Compl. ¶ 94.) At best, Sherman continued to charge the interest on each plaintiff's account that was reflected on that plaintiffs' final statement issued by the original creditor, without confirming that this particular rate was the one agreed between the original creditor and the plaintiff. (Fourth Amend. Compl. ¶ 90.) Plaintiffs further claim that in instances where Sherman had no indication from the card issuer of any potentially applicable rates, Sherman charged a default rate of 7%. (Id.) Plaintiffs assert that this default rate is higher than the 5% rate allowed by the Illinois Interest Act, 815 ILCS 205 *et seq.* ("IIA") in the absence of an agreement specifying higher interest. (Fourth Amend. Compl. ¶¶ 96-97.)

Defendants respond that plaintiffs "have supplied the critical information - the interest rate charged - in their Complaint," pointing out that the complaint provides specific interest rates charged by the plaintiffs' respective card issuers[1]. (Sherman Def. Mot. Dismiss Fourth Amend. Compl. at 7.) Defendants assert that plaintiffs' recitation of these interest rates constitutes admissions by plaintiffs as to the interest rates they had agreed to with their card issuers, and assert that Sherman never charged more than these rates. Defendants claim that under recently decided cases in this district, as assignees of the accounts, they stand in the shoes of the original creditors and can charge whatever rate of interest was agreed to between the original creditors and plaintiffs. *Olvera v. Blitt & Gaines, P.C.*, No. 03CV0617, 2004 WL 887372 (N.D. Ill. Apr. 26, 2004) (Kennelly, J.); *Vickey v. Asset Acceptance, LLC*, No. 03C5193, 2004 WL 1510026 (N.D. Ill. Jul. 2, 2004) (Moran, J.).

---

[1]The court notes that plaintiffs do not actually plead any interest rates for plaintiffs Blair, Breit, or Glover.

The problem for the defendants is that even if they are correct in relying on *Olvera* and *Vickey* to establish that they may continue to charge whatever interest rate was agreed between their assignor card issuers and the plaintiffs (an argument as to which this expresses no opinion at this stage), the court does not agree that plaintiffs have actually admitted what these agreed rates are.

Plaintiffs correctly point out that where particular interest rates are alleged to have been charged, they reflect variable interest rates charged by the original creditor on a certain date.[2] In other words, the interest rates pled are snapshots of the rate status for a changeable rate on a particular date, and do not stand as definitive statements of agreed rates. Defendants may be able to controvert plaintiffs' assertions, for example by producing card agreements dictating fixed rates for each plaintiff's account, but that is a question of fact that the court lacks evidence to consider in the context of a motion to dismiss. *Olvera*, 2004 WL 887372, at *5 (denying motion to dismiss in absence of credit agreements evidencing agreed interest rate); *compare Vickey*, 2004 WL 1510026, at *3 (granting summary judgment after reviewing terms of cardholder agreement).

FRS (one of the Services Defendants) raises a different argument, claiming that no recovery can be had against it because it relied on Sherman for all information (including the amount due) it acted upon in sending its collection letters to plaintiffs. Citing *Chaudry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999) and *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004), FRS correctly states that "debt collectors" such as FRS (and presumably the other Services Defendants) have no duty independently to investigate the merits of the debt claimed. While not stated in so many words, FRS implicitly concludes from this that Sherman can be liable for acting on incomplete or inaccurate knowledge, but that FRS cannot.

---

[2] For plaintiffs as to whom no particular rates are alleged (plaintiffs Blair, Breit and Glover), the complaint alleges that a rate of 7% was charged. (Fourth Amend. Compl. ¶ 90(b).)

5

This theory is not supported by the authority relied upon by FRS. In fact, *Randolph* expressly points out that "[FDCPA] § 1692e(2)(A) creates a strict liability rule. Debt collectors may not make false claims, period." *Id.* at 730. The FDCPA does allow FRS an affirmative defense to plaintiffs' FDCPA claims, but beyond a naked assertion that it relied on information provided by Sherman, FRS has not met the FDCPA's requirement to qualify for the affirmative defense - that it show "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). FRS and the other Services Defendants will have the opportunity to assemble evidence to support this defense during discovery, should they choose to do so. *Lockett v. Friedmann*, No. 03C2992, 2004 U.S. Dist. LEXIS 6857, *8-9 (N.D. Ill. Apr. 21, 2004) (declining to consider § 1692k(c) defense on a motion to dismiss) (Lefkow, J.).

FRS also argues that the complaint should be dismissed because it is not a "creditor" or creditor's agent under the IIA, and is thus not liable thereunder. This argument fails because counts I and II allege that the Services Defendants (including FRS) violated the FDCPA, not the IIA.

Finally, the Sherman Defendants and FRS allege that the complaint is deficient because it does not plead specifically that Sherman charged higher rates of interest than plaintiffs agreed to pay in their credit agreements. The complaint's allegations that Sherman charged interest incongruent with either the credit agreements or Illinois state law suffice to allow discovery that could reveal facts to answer this assertion.

In sum, counts I and II rely on the same pivotal facts: were the interest rates charged by Sherman (and attempted to be collected by the Services Defendants) the same as the rates the plaintiffs agreed to pay in their individual agreements with the card issuers from whom Sherman purchased plaintiffs' accounts? Neither party has attached these agreements or otherwise established

6

either: (a) the existence of these agreements or; (b) the rates of interest specified therein. These questions (are there agreements? What interest rates do they specify?) are best answered as to each plaintiff's account through discovery. Thus, all defendants' motions to dismiss are denied as to count I and count II.

**Count III**

Only plaintiffs Foster, Milton, Blair and Thurman assert count III. Their claim is that Sherman violated the FDCPA by charging interest higher than is allowed under the IIA, 815 ILCS §§ 205 *et seq.* regardless of whether plaintiffs agreed to such higher rates with the original creditors, and that both Sherman and the Services Defendants falsely represented the debts and interest as valid. *See* 15 U.S.C. §§ 1692e, 1692f. Plaintiffs hinge their claims on their argument that, due to the Sherman entities' status as "unregulated entities" under the IIA, that statute limits them to charging 5% interest or less where there is no creditor-debtor agreement specifying a higher rate, and 9% where there is an agreement, even if the agreement specifies a higher rate.

The complaint alleges that Sherman "actually added interest at rates exceeding 9% to the purported debts of Illinois residents," and further alleges with respect to plaintiffs Foster, Milton, Thurman that each were charged interest by defendants at rates between 19.99% and 28.49%. (Fourth Amend. Compl. ¶¶ 36, 39, 44, 47, 62, 65, 68, 90, 161.) With respect to plaintiff Blair the complaint does not allege that any particular rate of interest was charged, so the complaint's allegation that in such cases Sherman applied a default rate of d 7% applies to him. (Fourth Amend. Compl. ¶ 90.) Charging these "excessive" rates under the IIA forms the basis for Sherman's alleged breaches of the FDCPA, and the Services Defendants allegedly breached the FDCPA by sending collection letters representing these debts as valid. 15 U.S.C. § 1692e.

As plaintiffs argue, it is true that the IIA does limit creditors to charging 9% interest where

7

there is a written agreement, and 5% where there is not, unless the creditors qualify under the IIA as a type of entity that may enter into agreements to charge greater interest. 815 ILCS 205/2; 205/4; 205/5. Parties that may charge unlimited interest by agreement on "revolving credit" accounts include, among others, Illinois-based banks and lenders licensed under the Consumer Finance Act, Consumer Installment Loan Act, or Sales Finance Agency Act. 815 ILCS 205/4.2. Plaintiffs allege that the Sherman entities are not themselves allowed to contract for higher rates, and none of the defendants claim the contrary.

Taking plaintiffs' allegations that Sherman charged more than 9% interest as true for purposes of argument, plaintiffs can succeed on count III only if Sherman was neither "expressly authorized" under the agreement creating the debts with plaintiffs nor "permitted by [Illinois] law" to charge the interest alleged to have been charged. *Olvera*, 2004 WL 887372, at *2. The issue of whether Sherman was expressly authorized (that is, authorized by the original credit agreements) to charge the interest that it did collapses into the discussion of counts I and II above. As in *Olvera*, an examination of the original credit agreements is needed to supply the answer to that question. *Id.*, at *5.

This leaves the question of whether Sherman was disallowed by Illinois law from charging more than 9% interest, regardless of the rate agreed between the original credit grantors and plaintiffs. This was the central issue decided by *Olvera* and *Vickey*[3]. Both *Olvera* and *Vickey* featured facts similar to this case: in both, a credit card issuer had sold (and assigned) accounts in default to purchasers of defaulted debts (like Sherman), who in turn hired debt collection companies (like the Services Defendants) to do the actual collection work. Both cases held that an assignee of

---

[3] The court notes that those actions were filed by the same attorneys as those representing plaintiffs in this case.

a debt from an assignor credit issuer is entitled to receive whatever rate of interest the debtor agreed to pay the assignor, without limitation by the IIA. *Olvera*, 2004 WL 887372, at *3; *Vickey*, 2004 WL 1510026, at *2 (discussing *Olvera*).

An important additional fact in both *Olvera* and *Vickey* was that the original creditors were indisputably allowed to charge more than 9% interest under the IIA - they were licensed to do so. *Olvera,* at *2 (creditor was licensed by Illinois Division of Financial Institutions ("DFI")); *Vickey,* at *1 (creditor was Illinois- licensed bank). Thus, the debt purchasers in those cases were the assignees of a clear legal right to charge the contracted-for interest, which formed the basis for their successful defenses.

The importance of this fact is ignored by both plaintiffs and defendants here. Neither party claims or denies that any of the original creditors here were DFI licensees or were otherwise state-supervised financial institutions permitted to charge more than the 9% interest under the IIA. Plaintiffs have, however, pled that Sherman is not licensed or otherwise qualified to enter into agreements to charge more than 9% interest under the IIA. Defendants have not disputed this assertion, and further have not even mentioned whether or not the original creditors were eligible to charge more than the default 9% interest rate for unregulated entities under the IIA. Defendants have based their motion to dismiss count III (as well as counts I and II) on their assertions that *Olvera* and *Vickey* are just like this case, but evidence of this key fact necessary to their argument is not before the court.[4]

Since both parties are silent as to the issue of the original creditors' ability to charge more than 9% interest under the IIA, it is possible that plaintiffs could succeed on count III by marshaling

---

[4] Because defendants' motions to dismiss are denied on other grounds, the court does not reach plaintiffs' rather extensive argument that *Olvera* was wrongly decided. The court notes that *Olvera* is currently on appeal to the Seventh Circuit.

facts to show that Sherman could not legally have charged more than 9% interest as to any or all of the plaintiffs - because Sherman was not licensed to do so itself under the IIA and because (perhaps) neither were the assignors of the debts at issue. Thus, defendants' motions to dismiss count III are denied.

**Count IV**

All plaintiffs join in asserting count IV against all defendants, except for NES. Count IV alleges that each of the collection letters sent by the Services Defendants[5] (as approved by Sherman) "is confusing to the unsophisticated consumer, in that it states that the debt will increase, but does not explain how the consumer should determine what to pay, in violation of 15 U.S.C. § 1692e, and/or fails to coherently inform the consumer of the amount of the debt, in violation of 15 U.S.C. § 1692g." (Fourth Amend. Compl. ¶¶ 184-85.) To recall, FDCPA § 1692e, among other things, prohibits debt collectors from falsely representing the amount of the debt owed, while FDCPA § 1692g(a)(1) places an affirmative obligation on the debt collector to state in its collection letters "the amount of the debt" the debt collector is pursuing.

Defendants argue that the language of the collection letters does not violate the FDCPA under *Taylor v. Cavalry Investment, LLC*, 365 F.3d 572 (7th Cir. 2004) and *Madlock v. Van Ru Credit Corp.*, No. 04C3374 (N.D. Ill. July 15, 2004) (Shadur, J.). The rule stated in *Taylor* applies here: "[A] dunning letter must state the amount of the debt sufficiently clearly that the recipient is unlikely to misunderstand it." *Taylor*, 364 F.3d at 574. The degree of capability of understanding for the legal test at issue is that of "'the unsophisticated debtor,' a formulation which 'assumes that the debtor is 'uninformed, naive, or trusting,' [but] that statements are not confusing or misleading unless a significant fraction of the population would be similarly misled." *Chuway v. Nat'l. Action*

---

[5] The collection letters at issue are attached to the complaint.

*Fin. Servs.*, 362 F.3d 944, 949 (7th Cir. 2004), *quoting Veach v. Sheeks*, 316 F.3d 690, 692-93 (7th Cir. 2003). The court may analyze the letter without considering other evidence to determine if a plaintiff's claim that the letter is confusing or misleading under the FDCPA is a "fantastic conjecture." *Taylor* 365 F.3d at 574-75. If so, the court may dismiss the claim without considering other evidence. *Id.* If not, the plaintiff will be allowed to present evidence of confusion to help establish his claim that the apocryphyal unsophisticated debtor would be confused and/or misled by the letter. *Id.* at 575 ("A judge might be mistaken in supposing that a letter that was clear to him was clear to unsophisticated debtors, however, so it is open to plaintiff, in any but the clearest case, to present objective evidence of confusion . . . .").

Plaintiffs respond that *Chuway*, not *Taylor,* controls this case. The main difference between *Chuway* and *Taylor* is that the *Chuway* letter did not notify the debtor that the balance reflected in the letter was subject to change as interest accrued, whereas the *Taylor* letter did. Both letters identified the creditor, stated a "balance" and demanded payment of the balance shown, but the *Chuway* letter seemed to contradict its clear statement of the balance by implying that "something more" was owed, without description of either the source or amount of this "something more." *Chuway*, 362 F.3d at 947. The operative language of the *Chuway* letter as discussed by the Seventh Circuit was:

> "Please remit the balance listed above in the return envelope provided. To obtain your most current balance information, please call 1-800-916-9006." 362 F.3d at 947.

This language in *Taylor,* was held to correct the defect in the *Chuway* language:

> "If applicable, your account may have or will accrue interest at a rate specified in your contractual agreement with the original creditor." 364 F.3d at 574.

The letters attached to the complaint contain language similar, but not identical, to that held to be unconfusing in *Taylor.* Each letter at issue here contains a statement very similar to the

11

following:

> "[Sherman] has purchased the above referenced account from the above referenced Previous Creditor. Sherman has placed your account with this agency for collection. Sherman has advised us that interest will continue to accrue on your account as provided for in your agreement with the original creditor. . . . Please remit the entire balance due to our office using the return envelope provided."[6]

As can be seen from this excerpt, the letters at issue here contain a statement similar to that approved by *Taylor*, but the court notes a key point of distinction between *Taylor* and the instant case. There, the plaintiffs were given the opportunity to present evidence that the letters as a whole were confusing to the unsophisticated debtor. Two letters with similar language were discussed in *Taylor* (because two cases had been consolidated for appeal.) The letter containing the language discussed above was judged to be nonconfusing after the court had reviewed relevant evidence of confusion in the context of a summary judgment proceeding. The court ruled that affidavits from plaintiffs and a few other affiants was not adequate evidence to establish that the letters were confusing, and indicated that there must instead be "objective evidence of confusion, for example the results of a consumer survey." *Id.* at 575. As to the other letter in *Taylor*, the court affirmed the district court's dismissal of the count analogous to count IV here, but only after plaintiff there "both in his brief and at oral argument . . . made clear that the only evidence he would have wanted to present was an affidavit in which [plaintiff] would say that he had been confused by the letter." *Id.* at 576. *Taylor* approved the statement discussed above as unconfusing as a matter of law in itself, but allowed the facts to be heard as to the understandability of the letter as a whole which contained

---

[6] The language quoted is from MRS' letter to plaintiff Thurman, attached to the complaint as Exhibit E. The other letters are attached to the complaint as follows: Exhibit A - plaintiff Foster; Exhibit B - plaintiff Milton; Exhibit D - plaintiff Blair; Exhibit G - plaintiff Smith; Exhibit H - plaintiff Breit; Exhibit G - plaintiff Glover. The court notes that the wording of these letters is not identical, but that the differences between them are immaterial.

the statement[7].

Here, plaintiffs have not had the opportunity to present evidence of confusion. The plaintiffs have, however, stated a plausible claim that the letters as a whole are confusing as to the amount being claimed, pointing out that the mere statement of a "balance" at the top of each letter, followed by a demand for the "entire balance due" leaves open the question of whether the "balance" and the "entire balance due" are the same thing. Thus, plaintiffs have stated a claim, and although they may fail on the facts as in *Taylor*, they will be given an opportunity to present evidence to support their claim. *Johnson v. Revenue Management Corp.,* 169 F.3d 1057, 1059 (7th Cir. 1999) ("A contention that a debt-collection notice is confusing is a recognized legal claim; no more is needed to survive a motion under Rule 12(b)(6). Such a claim may fail on the facts, but assessing factual support for a suit is not the office of Rule 12(b)(6).") (omitting citation). The court realizes that it has reached a different conclusion from that of the court in *Madlock* relating to an almost identical collection letter. *Madlock* is on appeal to the Seventh Circuit, and the result will obviously be instructive.

For the reasons stated in this section, defendants' various motions to dismiss count IV are denied.

                                                        ENTER:

                                                        /s/_____
                                                       Joan B. Gottschall
                                                      United States District Judge

Dated: March 8, 2005

Correction Date: March 18, 2005

---

[7] Plaintiffs have attached the *Taylor* letters to their response brief. The *Taylor* letters appear to be significantly different in overall format and wording to the letters in this case, although the court states no position on the effect these differences may have with respect to the ability of the letters at hand to survive substantive scrutiny under the FDCPA.